UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:23-CR-02-REW-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JAMES SAMUEL JONES, ) | |
| ) | |
| Defendant, ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On June 2, 2023, the Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d).[1] D.E. 37. The hearing followed a sealed motion for a competency evaluation made by Defendant's attorney on February 27, 2023. D.E. 15. The Court granted the motion, ordered an evaluation in a custodial setting, and Defendant was remanded to the custody of the United States Marshal. D.E. 19. The Court, upon the required findings, ordered the psychiatric or psychological examination pursuant to 18 U.S.C. § 4241(b). D.E. 21.

The Court ordered the examination to be performed at the Federal Correctional Institution in Butner, North Carolina. D.E. 21. All parties had access to the Forensic Report ("the Report") prepared by Margaret Carraway, M.A. (Predoctoral Psychology Intern) and Katherine Sunder, Psy.D. D.E. 32. In the Report, the evaluators opined that Defendant is competent for trial purposes. *Id*. at 16. After receipt of the Report and Defendant's return to the District, the Court conducted a final hearing on competency on June 2, 2023. D.E. 37. During the final competency hearing, the parties stipulated to the admissibility of the Report, the evaluators' qualifications, and

---

[1] A finding that Defendant is unable to proceed to trial due to mental incompetency could be dispositive of his case. Thus, the Court proceeds via recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

1

the Report's findings. The parties also waived introduction of other proof of argument and waived the right to examine or cross-examine the evaluators.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). Thus, to be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Section 4247(d) of 18 U.S.C. governs the competency hearing and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing. *See* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). This framework does not dictate which party bears the burden, which has led to disagreement among the Circuits. *See United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (compiling cases).[2] Here, the proof is not in any way disputed, and the Court need not resolve the burden allocation question. *See Medina v. California*, 505 U.S. 427, 449 (1992) (indicating that argument over burden, in competency context, only matters in a "narrow class" of cases where the proof is "in equipoise").

---

[2] The Supreme Court, in dicta, has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241). However, the Sixth Circuit previously stated that "[t]he government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170 (6th Cir. 1995) (table).

Defendant, through counsel, stipulated as to both the admissibility and the substance of the Report. Accordingly, the only proof concerning Defendant's competency is the expert analysis of the evaluators. The Report reflects personal observation, a review of Defendant's available medical history and status, sufficient psychological testing, and a thorough assessment of Defendant's abilities in light of the applicable competency standards. The author analyzed Defendant's history, course of evaluation, and testing performance. The evaluators directly observed Defendant via interviews and subjected him to psychological testing. D.E. 32. The evaluators also contacted counsel for the government and defense. *Id.* at 3. The evaluators secured and reviewed some legal documents, including the Defendant's medical record and security records from the Bureau of Prisons, detention report from the United States Marshals Service, and discovery provided by the government. *Id*. at 3.

The Report is a thorough and comprehensive assessment of Defendant's mental and psychiatric condition. On the basis of available information, the evaluators diagnosed Defendant with Posttraumatic Stress Disorder (by history) ("PTSD") and Other Specified Depressive Disorder (depressive episode with insufficient symptoms). D.E. 32 at 13.

Defendant reported previous diagnoses of severe depression, schizoaffective disorder, bipolar disorder, and "Aspergers." D.E. 32 at 6, 11. Defendant also reported that his symptoms include auditory and visual hallucinations. *Id.* at 6. Defendant indicated that he experiences auditory hallucinations "all the time," which include self-deprecating demands. *Id.* Defendant stated that the visual hallucinations include "back orbs" and human-shaped shadows. *Id.* Defendant explained that his prior PTSD diagnosis was related to his molestation as a child. *Id.* at 7.

The Report includes summaries of Defendant's past medical records that the evaluators were able to obtain for review. While those records indicate diagnoses of schizoaffective disorder, the Report notes that no observable symptoms of psychosis were noted. D.E. 32 at 7. The Report also includes discussion of Defendant's recent competency evaluation in his related state case. *Id.* at 8. During that evaluation, Defendant reported the same prior diagnoses and symptoms to Dr. Steven Sparks, Ph.D., ABPP. *Id.* After conducting several psychological tests, Dr. Sparks concluded that Defendant did not "demonstrate symptoms of a serious mental illness" and was both criminally responsible and competent. *Id.*

During the course of intake, Defendant reported prior suicide attempts in 2001 and 2009 and being sexually assaulted in 2023. D.E. 32 at 9. Although he reported experiencing auditory and visual hallucinations at that time, the forensic psychologist noted Defendant was not observed responding to internal stimuli. *Id.* Although Defendant was placed on a 48-hour suicide watch due to his endorsement of suicidal statements, he remained "future-oriented, voiced reasons to live, and consistently denied having any specific plans or intentions to harm himself" during interviews. *Id.* Thus, no further suicide-watch periods were initiated during the evaluation. *Id.* Further, Defendant did not demonstrate any functioning issues stemming from his mood fluctuations during the evaluation. *Id.* at 12. Because Defendant did not meet the full criteria for a major depressive disorder, a diagnosis of "other specified depressive disorder" was assigned. *Id.*

Multiple psychological tests were administered, including the (1) Minnesota Multiphasic Personality Inventory-3 ("MMPI-3"); (2) Miller Forensic Assessment of Symptoms Test ("M-FAST") Edition (WAIS-IV); and (3) Georgia Court Competency Test-Mississippi State Hospital Revision ("GCCT-MSH"). D.E. 32 at 3.

As to the MMPI-3, the Report indicates that Defendant engaged in "inconsistent responding," which "most likely reflects a non-cooperative test-taking approach" or that he was not paying attention to the content of the test. D.E. 32 at 11. Thus, Defendant's MMPI-3 results were "invalid and uninterpretable." *Id.* Further, Defendant's M-FAST results were "not suggestive of a feigned or exaggerated response style regarding psychological symptoms." D.E. 32 at 11.

As to the PTSD diagnosis, the Report indicates that Defendant's "symptomology is not entirely conclusive." *Id.* at 11. However, based on "the consistent diagnosis of PTSD by prior treatment providers, as well as [Defendant's] ongoing report of PTSD symptoms," this diagnosis was maintained by the evaluators with a "by history" specifier. *Id.* The Report also notes that, despite Defendant's report of experiencing auditory and visual hallucinations, "none of his records document observable symptoms." *Id.* at 12. During the evaluation, Defendant did not display "any clear signs of psychosis." *Id.* Rather, Defendant's thought processes remained "logical, linear, and coherent," and there were "no signs of disorganization." *Id.* The Report further notes that Defendant did not endorse any "inflexible" or "ingrained" beliefs typical of psychotic delusions. *Id.* The Report concludes that the reported "voices" Defendant hears "are more characteristic of his internal monologue" rather than being distinct from his own thoughts. *Id.* Because no psychotic symptoms were observable during the evaluation, the Report concludes that a psychotic disorder diagnosis is not currently warranted. *Id.*

As to Defendant's report of a prior bipolar disorder diagnosis, the Report indicates that there was no evidence during the evaluation "to suggest a true manic episode." D.E. 32 at 12. And, although Defendant reported a prior "Asperger's" diagnosis, the Report notes that there "is no evidence in the received and reviewed records to corroborate this report." *Id.* at 13.

5

Overall, the Report includes a thorough assessment of these Defendant's past and present diagnoses and test scores.

The evaluator also found that Defendant had an adequate understanding of the court proceedings.  D.E. 32 at 13-16.  The Report reflects that Defendant identified and provided basic descriptions of the roles and functions courtroom participants, plea options, and appropriate courtroom behavior.  *Id.* at 13-15.  The Report also notes that Defendant demonstrated the ability to trust and communicate with his attorney and that he verbalized the importance of considering counsel's advice and being truthful.  *Id.* at 15. Further, the Report notes that Defendant currently has the ability to "tolerate the stress of trial."  *Id.* at 16.

The evaluators accurately applied the *Dusky* standard as codified in 18 U.S.C. § 4241(a) to determine that Defendant is competent.  D.E. 32 at 16.  The evaluators elicited from Defendant definitions of key terms and participants in a trial, as well as the elements and procedures related to a criminal trial.  *Id*. at 13-15.  As such, the Report supports a finding that both prongs of the *Dusky* competency test appear to be met in this case, and its conclusions are unrebutted.

Additionally, the Court sought the insight of counsel for Defendant, Hon. Travis Rossman. Mr. Rossman indicated that Defendant seemed to understand the contents of the Report and their interactions were consistent with the evaluators' assessment and conclusions.

For the foregoing reasons, the Court finds no evidence which tends to show that Defendant is not competent.  That finding, of course, precludes any finding of incompetency by a preponderance of the evidence.  Per 18 U.S.C. § 4241(a), Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Therefore, the undersigned **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings, to include trial, in this matter.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Any objection must be filed within **FIVE DAYS** of the entry of this recommendation. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that five-day period, this matter will be submitted to Judge Wier for his consideration and to address the procedural posture.

This the 5th day of June, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge